UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20861-CIV-HUCK/O'SULLIVAN

DWIGHT JOHANNES DOWNS,

    Plaintiff,

v.

UNITED STATES,

    Defendant.

_____/

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a partial trial held on February 7, 2011, at which the parties presented evidence regarding whether Florida's statute of repose for actions "founded on the design, planning or construction of an improvement to real property," Fla. Stat. § 95.11(3)(c), bars plaintiff Downs' claims. Downs brought this action against the United States in 2006 for negligence related to a Miami Beach renourishment project, which he alleges proximately caused the injury he received when he dove into the ocean and allegedly struck his head on a rock. In its second motion for judgment on the pleadings or, alternatively, summary judgment, the government argues that plaintiff's action is barred because it was not commenced within 15 years "after the date of . . . completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer."[1] Fla. Stat. § 95.11(3)(c). The Court, at a hearing held on January 13, 2011, found that fact issues existed and the record was incomplete on the limited issue of whether the statute of repose at Fla. Stat. § 95.11(3)(c) had actually run in this action and ordered the aforementioned partial trial.

---

[1] In its motion the government also argued the United States did not owe Downs the alleged duty to warn or maintain with regard to the area where his accident occurred. Neither the February 7, 2011 partial trial nor this Opinion addresses the government's argument on this point.

1

Downs asserts that the Local Cooperation Agreement ("LCA") contract between the United States and Dade County regarding the renourishment project, the Dade County Beach Erosion Control and Hurricane Protection Project ("Project"), is the relevant contract that establishes the completion or termination date for statute of repose purposes. The LCA, a contract entered into in 1972 between the United States and Dade County, establishes those parties' respective responsibilities for the Project. On the other hand, the government argues that the relevant contract is the United States Army Corps of Engineers' contract with a private contractor, Construction Aggregates Corporation, for dredge and fill work on the second phase of the Project, which includes the area where Downs' accident occurred. The Corps' contract with Construction Aggregates Corporation is dated March 31, 1978, and initial construction on this contract was completed by June 23, 1980. For the reasons discussed below, the Court finds that 1) the LCA is the operative contract for calculating the statute of repose with regard to the United States, and 2) because the LCA has not completed or terminated fifteen years prior to the initiation of Downs' suit, the statute of repose does not bar Downs' action.

## I. Factual Background and Procedural History[2]

Dwight Johannes Downs broke his neck and was rendered a quadriplegic in April 2003 when he dove into the ocean along Miami Beach in the area between 72nd and 73rd Streets and allegedly struck his head on a rock. The area of beach where Downs' injury occurred was re-nourished as part of the Project. The Project began when Congress authorized the U.S. Army Corps of Engineers to study the erosion of the Miami Beach shoreline and, in accordance with the Corps' recommendations, formally authorized the Project in the Flood Control Act of 1968 (PL 90-483). In 1972, the United States and Dade County entered into the aforementioned LCA for the Project. Initial construction on the Project occurred in five phases over the course of the late 1970s and early 1980s, and the Corps awarded contracts to private contractors to perform construction of each of these five phases. The area between 72nd and 73rd Streets was included as part of the

---

[2] The Court of Appeals for the Eleventh Circuit's and this Court's prior opinions in this case contain more extensive factual background. *See Downs v. U.S. Army Corps of Eng'rs*, 333 F. App'x 403 (11th Cir. 2009); *Downs v. United States*, No. 06-20861, 2007 WL 842136 (S.D. Fla. Mar. 20, 2007); *Downs v. United States*, No. 06-20861, 2010 WL 3222140 (S.D. Fla. Aug. 16, 2010).

Project's Phase 2/Contract 2. The Corps awarded Contract 2 to Construction Aggregates Corporation. Initial construction on Contract 2 ended in 1980, and initial construction on all phases of the Project ended in 1982. However, as discussed more extensively below, significant renourishment has occurred as part of the Project since 1982.

In 2006, Downs brought this suit against the federal government for negligence under the Federal Tort Claims Act. Downs alleges that the Corps negligently designed and constructed the Project because it allowed large rocks to be included in the fill material used to re-nourish the beach, one of which he allegedly struck, thereby proximately causing his injuries. Downs also alleges that the Corps' breach of its continuing duty to maintain—that is, to remove or reduce the rocks as a known danger—and its duty to warn of rocks in the beach's surf zone proximately caused his injuries.

In December 2006, the government initially moved for summary judgment on grounds unrelated to the statute of repose. The Court granted summary judgment for the government because it determined that the independent contractor exception and discretionary function exception to the FTCA's waiver of sovereign immunity exclude Downs' claims. Downs appealed the Court's ruling regarding the discretionary function exception, and the Eleventh Circuit concluded that the terms of the LCA did not necessarily immunize the government based on this exception. On remand and following an evidentiary hearing, the Court concluded that the LCA sets a "fixed or readily ascertainable standard," and to the extent the government did not comply with this standard, the discretionary function exception did not protect its conduct.

With the government no longer entirely immune from suit, the case was set for a bench trial. On November 22, 2010, the government again moved for summary judgment and, alternatively, for judgment on the pleadings arguing that the Florida statute of repose for actions founded on the design, planning or construction of an improvement to real property, Fla. Stat. § 95.11(3)(c), bars Downs' cause of action and, to the extent that the statute of repose has not expired, the United States does not owe Downs the alleged duty to maintain or warn. On January 13, 2011, the Court held a hearing on the government's motion. At that hearing it denied the motion for judgment on the pleadings with regard to the government's argument on the statute of repose because it found that the statute of repose is an affirmative defense, and, more importantly, that the government was relying

on materials outside of the pleadings. Next, the Court ruled that the United States was, as a legal matter, entitled to rely upon the statute of repose.[3] However, whether the statute of repose had actually run presented factual questions not capable of resolution on summary judgment or on the basis of the current record.[4] The Court then determined that it would hold a partial trial on February 7, 2011, limited to the statute of repose issue. At trial the parties submitted documentary evidence, including deposition transcripts, and the government called three witnesses to testify: (1) Thomas Martin, U.S. Army Corps Coastal Engineer and chief engineer on the Project since 1990, (2) Claudia Hunley, a former Corps employee, and (3) Brian Flynn, the Dade County Department of Environmental Resources Management's chief individual on the Project.

## II. Analysis: Findings of Fact and Conclusions of Law

After considering the testimony and evidence submitted at the trial, the Court concludes that (1) the LCA is the operative contract for calculating the statue of repose and (2) since the LCA contract was not completed or terminated fifteen years before Downs filed suit, the statue of repose does not bar Downs' action.[5] Because both issues present mixed questions of fact and law, the following analysis combines the Court's findings of fact and conclusions of law.

---

[3] In its Memorandum in opposition to summary judgment, Plaintiff argued that the United States did not fall within the class of persons—professional engineer, registered architect, or licensed contractor—entitled to rely upon Fla. Stat. § 95.11(3)(c) and that applying the statute to the government does not serve the statute's purpose. The Court rejects this argument because under the Federal Tort Claims Act, "the United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C § 2674. The evidence shows that the government was the designer and/or contractor for the Project. Thus, the government is entitled to the protection, if any, of the statute of repose as if it were a private litigant.

[4] In an Order filed concurrently with this opinion the Court has memorialized its rulings from the January 13, 2011 hearing.

[5] At the outset of its analysis, the Court notes that it has doubts as to whether the statute of repose at Fla. Stat. § 95.11(3)(c) applies at all to the Project because of the rather unusual contractual relationships among those numerous parties involved in the Project as well as the nature of the Project. However, for purposes of this Order the Court assumes that the statute of repose does apply because, as explained below, the Court finds that it does not bar Downs' action against the government.

4

A. <u>The LCA as the Operative Contract under Fla. Stat. § 95.11(3)(c)</u>

Florida Statute § 95.11(3)(c) provides a statute of limitations of four years for actions, other than for the recovery of real property, "founded on the design, planning or construction of an improvement to real property" and sets forth a fifteen year[6] statute of repose for such actions:

> In any event, the action [founded on the design, planning or construction of an improvement to real property] must be commenced within 15 years after the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, *or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer*, whichever date is latest.

Fla. Stat. § 95.11(3)(c) (emphasis added). Downs asserts that the LCA is the relevant contract which establishes the completion or termination date for the statute's repose purposes; whereas the government asserts that the relevant contract is Contract 2. As indicated above, the LCA is the contract entered into between the United States and Dade County in 1972 regarding the parties' respective responsibilities for the Project.[7] The LCA provides that if the government commences construction of the Project in accordance with the authorizing federal legislation, the County shall fulfill the Project's requirements of non-federal cooperation and states that the "parties mutually agree that only suitable material will be used for project beach fill, such suitable material being defined as non-rocky, sandy material similar to that of the existing beach." Contract 2 is the contract between the Corps and Construction Aggregates Corporation under which Construction Aggregates undertakes to perform the dredge and fill work on the Project's Phase 2, which includes the area between 72nd and 73rd Streets where Downs' accident

---

[6] In 2006, the Florida Legislature amended this section and shortened the repose period from fifteen to ten years. However, the parties agree that the older version of the statute prescribing a fifteen-year repose period applies to this action.

[7] At the February 7, 2011 trial, the government seemed to assert that the LCA is not a contract. However, the Eleventh Circuit's and this Court's prior rulings in this case have firmly decided this issue against the government. *Downs v. U.S. Army Corps of Eng'rs*, 333 Fed. App'x at 414 ("The district court correctly determined that the LCA is a contract between the Corps and Dade County and that such contracts can establish mandatory duties that implicate liability under the FTCA.")

5

occurred. Contract 2 is dated March 31, 1978, and initial construction on this contract was completed by June 23, 1980.

On this threshold issue, the Court finds that the LCA, not Contract 2, is the operative contract for determining whether the statute of repose has run as to the government. Under the plain language of Fla. Stat. § 95.11(3)(c), the date of completion or termination of the LCA initiates the period of repose. At the outset of its statutory analysis of § 95.11(3)(c) and whether it applies here, the Court notes that under Florida law, limitations defenses are strictly construed and "where there is reasonable doubt as to legislative intent, the preference is to allow the longer period of time." *Baskerville-Donovan Eng'rs, Inc. v. Pensacola Executive Condo. Ass'n, Inc.*, 581 So. 2d 1301, 1303 (Fla. 1991).

Beginning with the plain language of the statute, the Court notes that the statutory repose period of Fla. Stat. § 95.11(3)(c) starts, for purposes of this case, on the "date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer." *See Shelby Mut. Ins. Co. of Shelby, Ohio v. Smith*, 556 So.2d 393, 395 (Fla.1990) ("The plain meaning of statutory language is the first consideration of statutory construction.") The terms "professional engineer," "registered architect" and "licensed contractor" do not need further elucidation. As for "employer," the Court finds that when interpreted in light of the actions to which the statute applies, actions founded on the design, planning or construction of an improvement to real property, "employer" means an entity whose interest in the real property allows it to contract for the design, planning or construction of the improvement. The language of the statute also evinces its purpose: to protect the professional entities potentially liable based on their design, planning or construction. The statute's preamble provides further support for this interpretation.[8] This preamble, as quoted in *Durring v. Reynolds, Smith & Hills*, 471 So. 2d 603, 605 n.2 (Fla. 1st DCA 1985), indicates that the legislature intended the statute to protect the class of entities that

---

[8] As explained in *Durring v. Reynolds, Smith & Hills*, 471 So. 2d 603, 605 (Fla. 1st DCA 1985), this preamble, included in the 1980 amendments to Fla. Stat. § 95.11(3)(c), recited various statutory purposes that addressed the grounds upon which the statute had been declared unconstitutional in *Overland Construction Co. v. Sirmons*, 369 So.2d 572, 575 (Fla. 1979).

fall within the definition of "professional engineer," "registered architect" or "licensed contractor." The preamble states,

> WHEREAS, architects, engineers, and contractors of an improvement to real property may find themselves named as defendants in a damage suit many years after the improvement was completed and occupied, and WHEREAS, to permit the bringing of such actions without any limitation as to time, places the defendant in an unreasonable, if not impossible, position with respect to asserting a defense.

*Durring*, 471 So. 2d at 605 n.2 (quoting chapter 80-322 Laws of Florida (1980)).

Only under the LCA, not Contract 2, can the government be considered the Project's designer and/or contractor, the entities protected by the statute. Under Contract 2, the government is the employer, an entity not protected by the repose statute. Therefore, if the statute of repose applies to the Project at all, which for purposes of this opinion the Court assumes that it does, it only protects the United States based on the completion or termination date of the LCA. Thus, the Court finds that the LCA is the operative contract for purposes of calculating the repose period for this case.

This outcome comports with *Allan and Conrad, Inc. v. University of Central Florida*, 961 So. 2d 1083 (Fla. 5th DCA 2007), which found that Fla. Stat. § 95.11(3)(c) must be calculated based on the entirety of a project involving an improvement to real property, not a sub-part of such a project. In that action, the University sued individuals who provided services to the architect/engineer of a building construction project. 961 So. 2d at 1085. The defendants contended on appeal that the repose period of Fla. Stat. § 95.11(3)(c) applicable to them began when the architect for whom they worked completed its contract with UCF or when the University took actual possession of the building, both of which dates would bar the University's action. *Id.* at 1087. However, the Florida District Court of Appeal disagreed and found that the date of "completion or termination" under § 95.11(3)(c) refers to the date that *any* of the entities involved in a project and listed in the statute, professional engineer, registered architect or licensed contractor, completes or terminates its contract on the project. *Id.* This holding indicates that when interpreting and applying Fla. Stat. § 95.11(3)(c), a Court must analyze the entirety of the particular improvement to real property, not simply one (out of many) entity's involvement on the project. In the context of the Project in this case, the LCA is

7

a contract regarding the entire Project, whereas Contract 2 only concerned a Project sub-part. Therefore, under *Allan and Conrad,* the LCA, not Contract 2, is best viewed as the operative contract for purposes of calculating the statute of repose.[9]

> B. The LCA Has Not Completed or Terminated Fifteen Years Prior to Downs Filing Suit

The LCA does not specify a completion or termination date. Therefore, the Court turns to extrinsic evidence to determine the length and end-date of this contract, specifically evidence regarding the length of the Project. The 1975 Corps General Design Memorandum for the Project states that the "project life" is 50 years, General Design Memorandum at 4 (September 1975), and summaries of the Project contained in 1981, 1986 and 1987 addenda to this Design Memorandum all confirm that the Project life is 50 years, stating "[t]he project beach would be nourished periodically as needed to compensate for erosion losses throughout the 50-year project life." General Design Memorandum Addendum, *Introduction* (January 1981); General Design Memorandum Addendum III at 2 (September 1986); General Design Memorandum Addendum IV at 3 (September 1987). On this issue of Project length, the Court finds informative the testimony of Douglas Rosen, a supervisory geologist with the Corps and for purposes of the trial, a representative of the government. He states that while the Project's initial construction occurred in the 1970s and early 1980s, "[b]each nourishment projects are constructed initially recognizing that erosion will continue to occur and they have to be renourished and federal projects are authorized for 50 years." Rosen Dep. Tr. 8:18-24, Dec. 13, 2006. This evidence shows that the Project is a fifty-year undertaking. Additionally, as more fully discussed below, ongoing renourishment work occurred on the Project under the LCA during the 1980s, 1990s and 2000s and this ongoing Project work included renourishment of the geographical area covered by Contract 2.

At the February 7, 2011 trial, the Court heard the testimony of Thomas Martin, the U.S. Army Corps' lead engineer on the Project. Mr. Martin explained that the Corps

---

[9] The Court's prior rulings in this case, cited above at footnote 2, provide further support for its finding that the LCA is the contract which establishes the completion or termination date for purposes of the statute of repose. The LCA's status as the operative document for determining the government's liability is an inherent principle in all of these prior opinions.

is currently monitoring the Project, which he explained as monitoring erosion levels and ensuring that the Project's design template remains in place at all times during the authorized period of the Project. The Design Template, included as part of the Corps original 1965 Report for the Project, specifies the elevation, width and other measurements for the segment of beach included in the Project. During Mr. Martin's testimony, the government submitted a helpful chart documenting all federal participation in the Project from its inception to the present. This chart demonstrates that the Corps has participated in numerous periodic renourishment efforts on the Project during the 1980s, 1990s and 2000s across the length of the Project's included beach. The Corps' October 2001 Evaluation Report, which examines the Project's performance from 1990 to 2000, confirms the significant federal participation in ongoing Project maintenance. It includes a picture of the Miami Beach shoreline documenting the "periodic beach renourishments" or "maintenance-related" activities on the Project since completion of its initial construction. Evaluation Report at 18 (October 2001). This Report also details areas of future management for the (then) remaining 24 years of the Project's life. The Court finds Mr. Martin's testimony particularly helpful on the issue of the Project's continuing nature. When asked regarding the Corps' involvement in "normal routine maintenance of the [P]roject," Mr. Martin responded,

> [P]arts of the project erode . . . erode more than others, but it's known, before any project is built, that it's going to be renourished periodically. Just the fact that the project eroded in the first place means you're talking about an area that tends naturally to erode, versus to not erode. So when we build a beach fill, we have a pretty good idea that we'll have to go out and renourish from time to time, and that's part of the project. So we assist with that maintenance part of the federal project.

Martin Dep. Tr. 29:9-23, Dec. 19, 2006. Mr. Martin's deposition testimony shows that the Project, by its very nature as a beach erosion control project, implicates continued maintenance. The ongoing nature of the Project and the government's participation in continuing maintenance efforts support this Court's interpretation of the LCA as a contract that was not completed or terminated prior to 2006, when Downs filed suit. Moreover, since the Corps and others, such as Dade County, have continued to engage in work on the Project through the 2000s, under the authority of *Allan and Conrad, Inc. v. University of Central Florida*, 961 So. 2d 1083 (Fla. 5th DCA 2007), the period of

statutory repose under at Fla. Stat. § 95.11(3)(c) has not begun. As discussed above, this case holds that the latest date that any of the statutorily-contemplated entities (engineer, architect, or contractor) involved in an improvement to real property complete or terminate its contract is the proper starting date for the repose period. *Id.* at 1087.

The Court also finds persuasive that the Corps has engaged in multiple renourishment, maintenance projects along the stretch of Miami Beach covered by Contract 2, the area from 80th to 63rd Street that includes the segment of beach where Downs' injury occurred, though not specifically between 72nd and 73rd Streets. The government's chart submitted during Mr. Martin's testimony shows that the Corps participated in periodic renourishment in the Contract 2 area in 1987 and 2001. Moreover, Mr. Martin testified that the Corps has a renourishment project for a segment of beach covered by the original Contract 2 tentatively proposed for the summer of 2011. He also testified that in 2002 the Corps solicited bids for renourishment construction along a stretch of beach including the specific area between 72nd and 73rd Street; however, this renourishment project was never undertaken. The government argues that it is significant that the Corps has not completed maintenance construction in the specific geographical area between 72nd and 73rd Street since 1980, the year Contract 2 ended. The Court notes that this fact does not affect its analysis regarding the end-date of the LCA, a contract that encompasses the entire Project. *See Allan and Conrad, Inc. v. University of Central Florida*, 961 So. 2d at 1087 (finding that completion of a contract involving a sub-part of a larger improvement to real property did not trigger the statute's repose period so long as work on another contract involving the improvement was ongoing).

For the aforementioned reasons, the Court finds that the LCA was not completed or terminated fifteen years prior to Downs filing suit. In fact, because the LCA is ongoing, the Court finds that the period of statutory repose under Fla. Stat. § 95.11(3)(c) has not started, much less expired.

### III. Conclusion

Accordingly, the Court finds that the date of completion or termination of the LCA is the start date for calculating the period of repose under Fla. Stat. § 95.11(3)(c) with regard to the United States, and since the LCA has not completed or terminated

fifteen years prior to the initiation of Downs' suit, the statute of repose does not bar Downs' action.

DONE and ORDERED, Chambers, Miami, Florida, February 18, 2011.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record